Carl OTTO, Plaintiff,

v.

KOPPERS COMPANY, Inc., a Delaware corporation,

and

WHEELING STEEL CORPORATION, a Delaware corporation, Defendants.

Civ. A. No. 655-W.

United States District Court
N. D. West Virginia, Wheeling Division.
Sept. 1, 1955.

---

3. Id., p. 1688.

O'Brien & O'Brien, Wheeling, W. Va., Pennie, Edmonds, Morton, Barrows & Taylor, John E. Hubbell, New York City, for plaintiff.

Schmidt, Hugus & Laas, Wheeling, W. Va., Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., for defendants.

BOREMAN, District Judge.

This is an action for infringement of Letters Patent No. 2,599,067 issued to plaintiff on June 3, 1952, as the inventor of the invention in production of ammonium sulphate therein described. Plaintiff is a citizen and resident of the State of New York.

Defendant Koppers Company, Inc. (hereinafter referred to as "Koppers") is a corporation duly organized and existing under the laws of Delaware, having its principal place of business in Pittsburgh, Pennsylvania, and duly licensed to do business in the State of West Virginia. Defendant Wheeling Steel Corporation (hereinafter referred to as "Wheeling Steel") is a corporation duly organized and existing under the laws of Delaware, having its principal place of business at Wheeling, West Virginia, and duly licensed to do business in the State of West Virginia.

The complaint alleges that Koppers maintains a regular and established place of business in Brooke County, in the Northern District of West Virginia, and has committed acts of infringement in said county; that Wheeling Steel maintains a regular and established place of business in said Brooke County and has committed acts of infringement therein; that the venue of this action is laid in the Northern District of West Virginia under Title 28 United States Code, §§ 1391(b), 1391(c) and 1400(b).

The complaint charges that Koppers, without authority from the plaintiff, has been, since June 3, 1952, and still is, infringing said Letters Patent by: making, using and selling by-product coke oven apparatus embodying the patented invention; using methods embracing the patented invention for the continuous production of sulphate of ammonia; actively inducing others, including Wheeling Steel, to use said apparatus and methods of the patented invention; and selling to others, including Wheeling Steel, apparatus for use in practicing said methods of the patented invention constituting a material part of said invention, knowing the same to be especial-

ly made or especially adapted for use in an infringement of said patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, in the Northern District of West Virginia, as well as elsewhere within the United States, and will continue to do so unless enjoined by this Court.

Wheeling Steel is charged in the complaint with infringement in the Northern District of West Virginia by procuring Koppers to make for it apparatus embodying the patented invention; using said apparatus; and using methods embracing the patented invention for the continuous production of sulphate of ammonia.

The joint answer of Koppers and Wheeling Steel, in addition to denying infringement, under affirmative defenses, puts in issue and challenges the validity of the plaintiff's patent No. 2,599,067, alleging lack of invention, prior disclosure of the claimed invention in publications and patents, the selection and aggregation of old elements and the use of old method steps, each known to those skilled in the art before plaintiff's alleged invention, and for other reasons. Said answer, by way of counterclaim, alleges that an actual controversy exists and prays for a declaratory judgment disposing of the controversy.

The joint answer of the defendants denies that either of them has committed the acts of infringement as charged in the complaint and, answering the allegation in paragraph 8 of the complaint as to venue, says:

"Without admitting the conclusion of law implied in this paragraph, defendants, waive any issue of venue that otherwise could be raised on the complaint.".

The plaintiff served, pursuant to Rule 33 of Federal Rules of Civil Procedure, 28 U.S.C., upon Koppers seventeen interrogatories. Koppers answered a portion of interrogatory No. 10, all of interrogatory No. 15 and filed written objections to the remainder of plaintiff's interrogatories.

In briefs submitted by Koppers and by plaintiff on the objections to plaintiff's interrogatories and in argument before the Court, it appears that the answer of Koppers sufficiently challenges the plaintiff's assertion of venue under Title 28, Sections 1391(b) and 1391(c) in addition to admitting venue under Section 1400 (b).

Under the general venue statute, Title 28, § 1391, the cited subsections are as follows:

"(b) A civil action, wherein jurisdiction is not founded solely on diversity of citizenship, may be brought only in the judicial district where all defendants reside, except as otherwise provided by law.

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

Title 28, § 1400(b), reads as follows:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

Koppers contends, in objecting to answering interrogatories, that Section 1400(b) is the exclusive venue provision in patent infringement cases; that plaintiff is attempting to broaden the jurisdiction of the Court to cover all acts done anywhere by interrogatories directed to, and intended to prove, infringement in the United States generally and particularly beyond the limits of West Virginia, and that plaintiff should not be allowed to stand on Section 1391 for general and unlimited venue and jurisdiction, while at the same time relying on Section 1400(b), under which proof of infringement in West Virginia must be established and "under which it has been held that interrogatories as to alleged infringement outside West Virginia will not be allowed".

The court decisions on the question of venue in patent infringement cases are not unanimous. Ackerman v. Hook, 3 Cir., 1952, 183 F.2d 11, appears to be the first Court of Appeals decision to consider Section 1400(b). That Court reviews much of the historical background of that section, the revisor's notes in connection with the adoption of the new Title 28 in 1948 and held, in effect, that Section 1400(b) is the exclusive venue provision in patent infringement cases.

There have been no decisions by the Court of Appeals for the Fourth Circuit on this point. Plaintiff cites Dalton v. Shakespeare Co., 5 Cir., 1952, 196 F.2d 469; Guiberson Corp. v. Garrett Oil Tools, Inc., 5 Cir., 1953, 205 F.2d 660, certiorari denied 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390, rehearing denied 346 U.S. 917, 74 S.Ct. 273, 98 L.Ed. 413, supporting the proposition that the word "resides" in Section 1400(b) is to be given the definition of "residence", as set forth in the general venue statute relating to corporations, Section 1391(c).

Koppers calls attention to the fact that the Circuit Court of Appeals for the Seventh Circuit has taken the opposite view and cites C-O-Two Fire Equipment Co. v. Barnes, 7 Cir., 1952, 194 F.2d 410, which was affirmed by the United States Supreme Court by an equally divided Court, 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 695. Since an affirmance by an equally divided Supreme Court is not binding on the lower Federal Courts, Hertz v. Woodman, 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001, this Court is free to follow either the Fifth Circuit or the Seventh Circuit.

There are a number of District Court decisions to the effect that Section 1400 (b) is the controlling venue section in patent cases. I cite as follows: Pierce v. Perlite, D.C.Cal.1952, 110 F.Supp. 684; Nachtman v. Jones & Laughlin, D.C.D.C. 1950, 90 F.Supp. 739; Arkay Infants Wear v. Klines, D.C.Mo.1949, 85 F.Supp. 98; Fischer v. Karl, D.C.N.Y.1949, 84 F.Supp. 53; Rava v. Westinghouse, D.C. N.Y.1950, 90 F.Supp. 707; Federal Electric Products Co. v. Frank Adams, D.C.N.Y.1951, 100 F.Supp. 8; Ronson Art Metal Works v. Brown & Bigelow, D.C.N.Y.1952, 104 F.Supp. 716; Transmirra v. Magnavox, D.C.N.Y.1953, 110 F.Supp. 676.

The Court's attention has been directed to a decision of the Honorable Sterling Hutcheson, District Judge for the Eastern District of Virginia, in the case of Manville Boiler Co., Inc., v. Columbia Boiler Co. of Pottstown, Inc., wherein the Court approved the decision of the Court of Appeals for the Fifth Circuit in Dalton v. Shakespeare Co., supra. However, Judge Walter E. Hoffman, of the United States District Court for the Eastern District of Virginia, in the case of Clayton v. Swift & Co., D.C., 132 F.Supp. 154, 157, cited the decision of the Seventh Circuit in C-O-Two Fire Equipment Co. v. Barnes, supra, and stated:

"The practical effect of the C-O-Two case is based upon the logical reasoning that a general venue statute must give way to a special venue statute in patent infringement. cases. Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026. If it became necessary for this Court to so hold, it would follow the principle of the C-O-Two case as otherwise § 1400(b) would be effectively emasculated as the same may pertain to a corporate defendant."

Since the filing of the briefs by the plaintiff and Koppers in the instant case, the Circuit Court of Appeals of the Tenth Circuit has decided the case of Ruth v. Eagle-Picher Co., 225 F.2d 572, holding that

"The patent venue statute, as construed in Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026, reflected a sound policy of long standing. It was based on considerations of practicality and convenience in such litigation. A patent infringement action involves a peculiar combination of science or technology and law. In the ascertainment of the pertinent technical facts, it is im-

portant that the trial judge have first-hand visual and audible knowledge of the conditions, the environment and the art itself and the testimony of the most competent witnesses. Practicality and convenience are best served when the case is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business.

"An intention on the part of Congress to depart from that policy should not be lightly inferred."

■ That Court held that the revisor's notes to the new Judicial Code clearly indicate mere language changes in Sections 1391 and 1400 and negative any intent to effect a substantial change. Moreover, where there are two statutes upon the same subject, one special and the other general, the presumption is, in the absence of an express repeal or absolute incompatibility, that the special is intended to remain in force as an exception to the general. The rule is particularly applicable where the statute is enacted at the same time or about the same time. The Tenth Circuit further stated that its conclusion is supported by a considerable body of judicial opinion and cited Ackerman v. Hook and C-O-Two Fire Equipment Co. v. Barnes.

■ In Dalton v. Shakespeare Co., supra, the Court apparently gave no weight to the historical background of the special venue section in patent suits, but based its decision on the technical wording of the two sections of the statute. This Court is inclined to follow the case of C-O-Two Fire Equipment Co. v. Barnes, supra, and the recently decided case of Ruth v. Eagle-Picher Co. by the Tenth Circuit Court of Appeals. Section 1391 is a general provision, while Section 1400(b) is special and specific. This Court is of the opinion that a specific provision should control a general provision and that it is improper to disregard the historical background and the purpose of the special and specific provision of the statute fixing venue in patent infringement actions.

In view of this Court's conclusion as to venue in this action, consideration must next be given to a determination of the questions raised on the objections to plaintiff's interrogatories and, particularly, the objection that certain interrogatories would require disclosure by Koppers of possible alleged acts of infringement and suspected activities outside the State of West Virginia.

Before there could be a proper claim for damages for infringement arising from the acts of Koppers and Wheeling Steel, two issues must first be decided in favor of the plaintiff: (1) The validity of his patent; and (2) infringement by the defendants within the Northern District of West Virginia.

Plaintiff's interrogatory No. 1 would require Koppers to identify all installations of apparatus for the production of ammonium sulphate from coke-oven gas, built or building, from plans prepared by or under the supervision of Koppers, at any time from January 1, 1945, to June 14, 1954, giving as to each installation the name of the owner, the location, dates of commencement and completion, the number and type of saturators defined as "cracker pipe", "spray" or other. The plaintiff argues that all acts of possible infringement anywhere in the United States are relevant, because of unlimited jurisdiction over these defendants as "resident corporations". Plaintiff argues further that he seeks evidence bearing upon the issue of validity and the affirmative defense of lack of invention and only secondarily in aid of proof of infringement. He says he wants to show that Koppers has embodied, in all of its new mode of construction, the heart of plaintiff's invention and, in so doing, abandoned a uniform course of construction according to other modes; that, to do this, he must be allowed to inquire concerning Koppers' activities everywhere with respect to present and past installations of coke-oven by-product apparatus. In support of this position, plaintiff cites the following cases: Ackermans v. General Motors Corp'n, 4 Cir., 1953, 202 F. 2d 642; Black & Decker Mfg. Co. v.

Baltimore Truck Tire Service Corp., 4 Cir., 1930, 40 F.2d 910; Watson v. Heil, 4 Cir., 1951, 192 F.2d 982.

Koppers objects to this interrogatory because it is too broad and, in reality, a fishing expedition in an attempt to discover possible acts of infringement outside this judicial district which have no relevancy to the present issues; because it calls for information about installations prior to the issuance of the patent in suit; because it demands information going only to the question of damages to which plaintiff is not entitled unless and until validity and infringement in this district have been established. Koppers argues that the Court, upon objection, should restrict interrogatories to facts that clearly appear to the Court to be relevant in the light of the issues in the case before it, and should weigh obvious burden and expense imposed upon the party interrogated by a nebulous, doubtfully relevant, and apparently speculative interrogatory, against the mere possibility of some undisclosed and remotely possible benefit to the one filing it.

Both plaintiff and Koppers appear to rely upon the case of Martin v. Fairchild Corp., D.C.E.D.N.Y.1938, 23 F. Supp. 823, 824, as supporting their respective positions with respect to interrogatory No. 1 (and others hereinafter considered). There, non-resident corporations and a resident defendant corporation were involved and the case was decided under old Section 109 of Title 28 U.S.C., prior to code revision. The Court held that, as to the non-resident defendant corporations, "jurisdiction rests upon their having regular and established places of business within this district, and the commission by each of an act of infringement, also within this district". The Court further said: "As to the non-resident defendant corporations over which jurisdiction will fail unless an infringing act be shown, *these interrogatories will be restricted to whatever has been done within the scope of the inquiry, within this district*". (Emphasis supplied.) It is noted that validity of the patent, in addition to infringement, was an issue in that case.

It is well settled that a presumption of validity attaches to the due grant of the patent by the Patent Office. The cases from the Fourth Circuit cited by the plaintiff seem to support the proposition that an additional presumption arises from certain facts, namely, that the invention filled a want arising from a new situation, that it entered into immediate use, that it met with pronounced commercial success; that, in addition, is the presumption arising from the imitation of the patented article by the manufacturer of the alleged infringing device.

However, here the plaintiff is clearly entitled to all pertinent information concerning alleged infringement installations within this district and has already been furnished with certain drawings and other information concerning same. If he desires additional information in that particular, he may obtain it by following proper discovery procedure. The plaintiff says that he has already investigated two other alleged infringing Koppers' installations in other states and it is to be assumed that he can testify relative thereto.

Armed with the presumption of validity of his patent and with other presumptions which may flow from evidence now in his possession or readily available, he appears to be going far afield in interrogatory No. 1. He seeks to obtain information as to all installations, by Koppers, of coke-oven by-product apparatus without this district, for long years prior to the date of plaintiff's patent, without limitation as to the type of saturator here involved. Even if the relevancy of such inquiry were clearly apparent and, according to plaintiff's theory, bore upon the question of "invention", much or all of it might well be merely cumulative and not necessary to a determination of the issues first to be considered. The Court is of the opinion that this interrogatory is too broad in scope, the results sought to be

obtained are too vague and indefinite and the relevancy is not readily and clearly apparent. Therefore, the objection of Koppers to answering interrogatory No. 1 is sustained.

Plaintiff's interrogatories Nos. 2 and 3 are based upon interrogatory No. 1 and, in view of the Court's ruling, Koppers need not answer these interrogatories.

Interrogatories Nos. 4, 5 and 6 seek information concerning an installation by Koppers of apparatus for the production of ammonium sulphate from coke-oven gas for Pittsburgh Coke & Chemical Company in the State of Pennsylvania, covering a period from January 1, 1945, to January 1, 1950. These interrogatories pertain to one of the installations which plaintiff says he has investigated and, for that and other reasons hereinbefore stated as to interrogatory No. 1, Koppers need not answer them.

Interrogatories Nos. 7, 8 and 9 seek information concerning an installation by Koppers of apparatus for the production of ammonium sulphate from coke-oven gas for Woodward Iron Company in the State of Alabama, covering a period from January 1, 1945, to January 1, 1950. These interrogatories pertain to one of the installations which plaintiff says he has investigated and, for that and other reasons hereinbefore stated as to interrogatory No. 1, Koppers need not answer them.

Koppers has already answered that portion of interrogatory No. 10 which pertains to the installation for Wheeling Steel in the Northern District of West Virginia, and Koppers need not answer those portions of this interrogatory pertaining to installations for Pittsburgh Coke & Chemical Company and Woodward Iron Company.

As to plaintiff's interrogatory No. 11, Koppers will be required to answer and its objection to said interrogatory is overruled.

The Court is advised that certain drawings have been furnished by Koppers to the plaintiff relative to the installation of the present apparatus at Wheeling Steel, which drawings appear to satisfy the plaintiff's demands. Unless it is made to appear that these drawings are insufficient for plaintiff's purposes, the Court is of the opinion that that portion of plaintiff's interrogatory No. 12 has been satisfactorily answered. As to the remainder of plaintiff's interrogatory No. 12, Koppers will be required to answer and its objection thereto is overruled.

Koppers' objections to plaintiff's interrogatories Nos. 13 and 14 are overruled and Koppers will be required to answer.

Plaintiff's interrogatory No. 16 is as follows: "Identify any publications by Koppers Company, Inc., or others since January 1, 1945, describing apparatus for sale or installation by Koppers Company, Inc., for the production of ammonium sulphate from coke-oven gas, giving the name and date of publication or other description thereof". Koppers objects to answering this interrogatory because it includes publications by third parties and because it seeks to require an interpretative conclusion as to the contents of such publications. Koppers need not answer that portion of this interrogatory which applies to publications by others. However, Koppers will be required to answer the remainder of the interrogatory and its objections thereto are overruled.

Plaintiff's interrogatory No. 17 is as follows: "Identify any advertisement or brochure prepared or issued since January 1, 1945, by or under the direction of Koppers Company, Inc., describing apparatus for sale or installation by Koppers Company, Inc., for the production of ammonium sulphate from coke-oven gas, giving the date and number or other description thereof". Koppers shall be required to answer this interrogatory and its objections thereto will be overruled.

Attorneys for Koppers are directed to prepare an order consistent with this opinion and, after exhibiting the same to counsel for the plaintiff, present it to the Court for entry.